UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN DERAFFELE, | : | CIVIL NO: 4:15-CV-02186 |
| | : | |
| Plaintiff | : | (Judge Brann) |
| | : | |
| v. | : | (Magistrate Judge Schwab) |
| | : | |
| CITY OF WILLIAMSPORT, *et al.,* | : | |
| | : | |
| Defendants | : | |
| | : | |

## REPORT AND RECOMMENDATION

**I. Introduction.**

The plaintiff, John DeRaffele, brings claims under the Fourth and Fourteenth

Amendments based on the City of Williamsport's condemnation of one of his

rental properties because the property did not have electric service.  The defendants

filed a motion to dismiss the amended complaint.  Because the lack of electricity

constituted an emergency justifying closure of the property without prior notice

and DeRaffele has not alleged facts to support an inference that there was not an

adequate post-deprivation remedy available, the amended complaint fails to state a

due process claim upon which relief can be granted.  Because, for similar reasons,

the temporary seizure of the property was reasonable, the amended complaint fails

to state a Fourth Amendment claim upon which relief can be granted.  And because

the amended complaint fails to state a claim upon which relief can be granted

against the officers who condemned the property, the amended complaint also fails to state a claim against the City of Williamsport upon which relief can be granted. Accordingly, we recommend that the Court grant the motion to dismiss.  We also recommend that DeRaffele be granted leave to file a second amended complaint.

## II.  Background and Procedural History.

DeRaffele's amended complaint names as defendants the City of Williamsport; Joseph Girardi, the head of the Williamsport Codes Department; and Thomas Evansky, an inspector with the Williamsport Codes Department.   In this case,[1] DeRaffele challenges the condemnation of one of his properties—814 Hepburn Street, Williamsport, Pennsylvania.  He brings this action under 42 U.S.C. § 1983 and raises claims under the Fourth and Fourteenth Amendments.[2]

---

[1]  This is not the only case that DeRaffele has brought regarding the City of Williamsport and his rental properties. *See also DeRaffele v. City of Williamsport*, 4:14-CV-01849 (M.D. Pa.) and *DeRaffele v. City of Williamsport*, 4:15-CV-0572 (M.D. Pa.).  Each case, however, deals with different property.  And this case deals with a different ordinance than the other two cases.

[2]  Although not mentioned elsewhere in the amended complaint, in the section of the amended complaint that sets forth the relief requested, DeRaffele seeks a declaratory judgment that the Williamsport Codes Department violated the Fifth Amendment as well as the Fourth and Fourteenth Amendments.  Such a passing reference is not sufficient to raise a Fifth Amendment claim.  Thus, we construe the amended complaint as raising only a Fourth Amendment claim and a Fourteenth Amendment procedural due process claim.

Because we are addressing a motion to dismiss the amended complaint, we accept the following factual allegations from the amended complaint as true.

DeRaffele owns 13 properties in Williamsport including 814 Hepburn Street.  DeRaffele rented 814 Hepburn Street to Lasheena Richardson, who signed a lease with DeRaffele for 24 months to begin on November 15, 2014. *See Doc. 8-1* (Residential Tenancy Agreement).  At some point, a neighbor called the Codes Department stating that he or she believed that the power was off at 814 Hepburn Street.  On July 27, 2015, Evansky, on orders from Girardi, went to 814 Hepburn Street and condemned the property "for the prospect of its lack of electricity." *Doc. 8* at ¶15.  The property was "posted" and the tenants removed. *Id.* at ¶1.  The Codes Department did not notify DeRaffele of the condemnation; rather, DeRaffele found out about the condemnation from his maintenance man, Robert Setzler.

DeRaffele alleges that the Williamsport Codes Department used a provision of the International Property Maintenance Code (IPMC or Code)[3] to condemn 814 Hepburn Street.  But, according to DeRaffele, the Williamsport Codes Department used the IPMC inappropriately and incorrectly.  Further, DeRaffele alleges that the IPMC, as used by the Williamsport Codes Department, lacks any provision for

---

[3] Although DeRaffele refers to the "International Residential Code" in his amended complaint, *see doc. 8* at ¶9, by letter he has informed the Court that he meant the IPMC, and he requested that the IPMC be substituted for the International Residential Code, *see doc. 32*.

notice to the landlord or the tenant regarding the closure of the property. DeRaffele also alleges that the Williamsport Codes Department allows its inspectors, at their sole discretion, to condemn properties without any pre- or post-deprivation hearing, and there is no opportunity for landlords or tenants to contest the decision to close the rental unit prior to closure.  According to DeRaffele, code-enforcement officers are not required to allege or provide any evidence that the owner or occupant knew or should have known about the non-payment of the electric bill prior to closure of the property, and the Williamsport Codes Department does not allow any defense to owners or occupants based on lack of knowledge.

On or about July 28, 2015, Richardson arranged to have the electricity turned on, and she spoke to the Codes Department, which allegedly told her that no re-inspection was required for her to move back into 814 Hepburn Street.  She moved back in on or about July 28, 2015.

On September 18, 2015, Evansky notified DeRaffele that the condemnation of 814 Hepburn Street was still in effect since the Codes Department had not re-inspected the property.  Evansky then issued DeRaffele a citation for violating a section of the Code that DeRaffele contends does not apply to his case.  The

citation charged DeRaffele with allowing occupancy of a condemned and placarded structure in violation of §108.5 of the IPMC. *See Doc. 10-5.*[4]

A hearing on that citation was held before Magisterial District Judge Page on November 16, 2015. At the hearing, Evansky testified that he believed that no one had notified the Codes Department of the re-entry on July 28, 2015, and that DeRaffele had removed the condemnation sign without a re-inspection. At the hearing, the City Solicitor presented an email that stated that the electricity was off at 814 Hepburn Street from July 27, 2015, to September 17, 2015. DeRaffele believes those statements are incorrect and untruthful. At the hearing, DeRaffele's maintenance man, Robert Setzler, testified that the electric at the property was on from July 28, 2015, until September 17, 2015, at which time it was put into a new tenant's name. Setzler also testified that he was told that the tenant, Ms. Richardson, had called the Codes Department and obtained permission to re-enter

---

[4] The court may take judicial notice of adjudicative facts that are not subject to reasonable dispute because they are "generally known within the trial court's territorial jurisdiction" or because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b)(2). The docket (available on the website of the Unified Judicial System of Pennsylvania: http://ujsportal.pacourts.us) and documents from DeRaffele's state case are public records of which we can take judicial notice. *See Wilson v. McVey*, 579 F. Supp. 2d 685, 688 (M.D. Pa. 2008) (taking judicial notice of court docket); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) (stating that the court "may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity").

the property without a re-inspection.  DeRaffele allegedly asked Setzler to verify

that information, and Setzler called the Codes Department numerous times asking

for Evansky.  Setzler could not reach Evansky, but he spoke to Codes Inspector

Edward Krissling, who told him that no re-inspection was required when a

property had been condemned for lack of electricity.

On November 30, 2015, Judge Page found that DeRaffele "did allow and

permit occupancy of a Condemned and Placarded property in violation of the

IPMC section 108.5," and he ordered DeRaffele to pay a fine and costs of $334.00.

*Doc. 10-6* at 3.[5]  DeRaffele appealed to the Court of Common Pleas of Lycoming

County. *See Doc. 15-1* at 34-35.  On April 7, 2016, "following a Summary Appeal

Trial," Judge Lovecchio found DeRaffele guilty and sentenced him to pay the costs

of prosecution and the fine imposed by Magisterial District Judge Page within 90

days. *Doc. 22-1*.  DeRaffele appealed Judge Lovecchio's decision to the

Commonwealth Court of Pennsylvania, and that appeal is still pending. *See* docket

---

[5] Section 108.5 of the 2015 IPMC provides:

> **Prohibited occupancy.**  Any occupied structure condemned
> and placarded by the *code official* shall be vacated as ordered
> by the *code official*.  Any person who shall occupy a placarded
> *premises* or shall operate placarded equipment, and any *owner*,
> owner's authorized agent or person responsible for the *premises*
> who shall let anyone occupy a placarded *premises* or operate
> placarded equipment shall be liable for the penalties provided
> by this code.

*Doc. 10-4* at 3 (emphasis in original).

6

for *City of Williamsport Bureau of Codes v. DeRaffele*, No. 655 CD 2016 (Pa. Commw. Ct.).

The amended complaint contains two counts—one based on the Due Process Clause of the Fourteenth Amendment and one based on the Fourth Amendment. Contending that the condemnation of 814 Hepburn Street was done without prior notice and a hearing and that post-deprivations procedures were inadequate to protect his property interest, DeRaffele presents a procedural due process claim. Contending that the defendants unreasonably interfered with his property interests by summarily evicting his tenants and depriving him of all use of his property, DeRaffele presents a claim under the Fourth Amendment.[6]

DeRaffele is seeking a declaratory judgment that the Williamsport Codes Department violated his rights, an injunction prohibiting enforcement of any condemnation by the Williamsport Codes Department without a pre-deprivation hearing, and damages.

---

[6] Although there is some passing language in the amended complaint regarding the rights of DeRaffele's tenants, we do not construe the amended complaint as attempting to assert claims on behalf of his tenants.  Moreover, DeRaffele does not have third-party standing to represent his tenants since a requirement of such standing is that there be some hindrance to the third party presenting his or her own claims. *See King v. Governor of the State of New Jersey*, 767 F.3d 216, 243 (3d Cir. 2014).  And DeRaffele has not pleaded any facts suggesting such a hindrance. Nor has he argued that such a hindrance is present in this case.

Currently pending is the defendants' motion to dismiss the amended complaint, which has been fully briefed.  For the reasons discussed below, we recommend that the Court grant that motion.[7]

## III. Motion to Dismiss and Pleading Standards.

In accordance with Fed.R.Civ.P. 12(b)(6), the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a motion to dismiss, "[w]e must accept all factual allegations in the complaint as true, construe the complaint in the light favorable to the plaintiff, and ultimately determine whether plaintiff may be entitled to relief under any reasonable reading of the complaint." *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010).  In making that determination, we "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the [plaintiff's] claims are based upon these documents." *Id.* at 230.[8]

---

[7]  DeRaffele requested oral argument on the motion to dismiss. *See Doc. 20.* Concluding  that oral argument would not assist us in issuing our recommendation, we decline to schedule an oral argument in this case.  Moreover, DeRaffele asserts that he wants to present "proof" at oral argument.  But oral argument is not a time for a party to present proof, and the motion at issue here is a motion to dismiss, which is decided on the pleadings.

[8]  The defendants attach to their motion to dismiss a "Notice of Condemnation" dated July 23, 2015.  They assert in their brief in support  that this Notice was provided to DeRaffele on July 23, 2015. *See Doc. 11* at 8.  But in a letter to the Court, the defendants assert that the Notice of Condemnation was sent to

"A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a)." *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 769-70 (M.D. Pa. 2012).  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009).  The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is and of the grounds upon which it rests. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).  "A complaint has to "show" such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief can be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint

---

DeRaffele on July 27, 2015, not July 23, 2015. *See Doc. 21*. DeRaffele asserts in his brief in opposition to the motion to dismiss that he did not receive the Notice of Condemnation prior to the condemnation, and, to his knowledge, he did not receive the Notice at all. *Doc. 15* at 5.  We will not consider the Notice of Condemnation as it is document outside the pleadings and the parties disagree about its authenticity.  Nor do we consider the affidavits, *see doc. 15-1* at 5-7 and 25-26, submitted by DeRaffele as they are not within the type of documents that the court may consider in deciding a motion to dismiss.

must be construed in the light most favorable to the plaintiff. *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,* 20 F.3d 1250, 1261 (3d Cir. 1994).  But a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

Following *Twombly* and *Iqbal,* a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation.  In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'  Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Tp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal,* 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal

10

pleadings drafted by lawyers.'" *Erickson,* 551 U.S. at 94 (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)).  Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013).  Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions.  Rather, a *pro se* complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## IV. Discussion.

### A.  The Favorable-Termination Rule of *Heck v. Humphrey* Bars Any Claims Based on the Issuance of the Citation but Does Not Bar the Claims Based on the Initial Condemnation.

The defendants contend that DeRaffele's claims are barred by the favorable-termination rule of *Heck v. Humphrey*, 512 U.S. 477 (1994).  For the reasons discussed below, we conclude that to the extent that DeRaffele's claims are based on the issuance of the citation, they are barred by *Heck*.  But we also conclude that DeRaffele's claims based on the initial condemnation are not barred by *Heck*.

In *Heck,* the United States Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence

invalid, a Section 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such [a] determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." *Id.* at 486-87, 490 (footnote omitted).  "Thus, when a [plaintiff] seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.*

The rationale of the Court in *Heck* was based, in part, on a desire to avoid parallel litigation over the issues of probable cause and guilt, to prevent the creation of two conflicting resolutions arising out of the same transaction, and to preclude a convicted criminal defendant from collaterally attacking a conviction through a civil suit. *Royal v. Durison,* 254 F. App'x 163, 165 (3d Cir. 2007).  Even if the plaintiff has exhausted available state remedies, his § 1983 cause of action is deferred unless and until the conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus. *Heck,* 512 U.S. at 489.  A "§ 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the [plaintiff]'s suit (state conduct leading to conviction or internal prison proceedings)—*if* success in

that action would necessarily demonstrate the invalidity of the confinement or its duration." *Wilkinson v. Dotson,* 544 U.S. 74, 81-82 (2005). *Heck* applies to convictions for violation of municipal ordinances at least where, as here,[9] criminal penalties such as fines are at issue. *See Shahid v. Borough of Eddystone*, No. CIV.A. 11-2501, 2012 WL 1858954, at *4 (E.D. Pa. May 22, 2012) (citing and cases and determining "that *Heck* applies to convictions for civil infractions obtained in criminal proceedings"), *aff'd on other grounds*, 503 F.App'x 184 (3d Cir. 2012).

The defendants contend that all of DeRaffele's claims are barred by *Heck* because his claims are based on the defendants improperly condemning his property, and, according to the defendants, a defense to the citation that he received is that he did not illegally permit occupancy of condemned property because the property was not properly condemned in the first place. Yet the defendants have not pointed to anything to support their contention that a violation of Section 108.5 of the IPMC—the section of the ordinance that DeRaffele was convicted of violating—requires that the underlying condemnation was proper in the first place.

---

[9] Section 1741.02 of IPMC, as adopted by the City of Williamsport, provides for fines or imprisonment for violations of its provisions. *Doc. 10-2* at 1 ("Any person, firm or corporation, who shall violate any provision of this Code shall, upon conviction thereof, be subject to a fine of not less than $100, nor more than $1,000, or imprisonment for a term not to exceed 30 days, or both, at the discretion of the Court.").

As noted earlier, Section 108.5 of the 2015 IPMC provides:

> **Prohibited occupancy.**  Any occupied structure condemned
> and placarded by the *code official* shall be vacated as ordered
> by the *code official*.  Any person who shall occupy a placarded
> *premises* or shall operate placarded equipment, and any *owner*,
> owner's authorized agent or person responsible for the *premises*
> who shall let anyone occupy a placarded *premises* or operate
> placarded equipment shall be liable for the penalties provided
> by this code.

*Doc. 10-4* at 3 (emphasis in original).  The elements of the Section 108.5 violation

of which DeRaffele was convicted required: (1) that the premises had been

placarded by the code official; (2) that DeRaffele was the owner of the premises;

and (3) that DeRaffele allowed someone to occupy the placarded premises.  As the

recitation of these elements shows, Section 108.5 does not require that the

premises had been properly condemned in the first place for an owner to violate

that section by allowing re-occupancy of a placarded premises.  It only requires

that the premises had been placarded by the code official.  In fact, the defendants

themselves seem to recognize this as they assert that "[t]o be convicted of violating

Section 108.5 of the IPMC, it must be shown that: 1) the subject property was

condemned; and 2) the property owner permitted occupancy of the condemned

unit." *Doc. 11* at 14.   Neither of those two elements cited by the defendants have

anything to do with whether the property was properly condemned in the first

place.  Accordingly, while any claim based on the issuance of the citation is barred

by *Heck* because DeRaffele was found guilty of the charge in the citation and he has not shown that the state proceedings terminated in his favor,[10] DeRaffele's claims based on the initial condemnation, which occurred months before he was issued the citation, are not barred by *Heck* because success on those claims would not necessarily demonstrate the invalidity of his conviction pursuant to Section 108.5 of the IPMC.

## B.  Due Process.

The defendants urge the Court to dismiss DeRaffele's due process claim because given that there was an emergency caused by the lack of electricity, no pre-deprivation process was due to DeRaffele, and there were adequate post-deprivation remedies available to DeRaffele, but DeRaffele failed to take advantage of those remedies.

The Fourteenth Amendment provides that a state shall not "deprive any person of life, liberty, or property, without due process of law." U.S. CONST.

_____

[10]  Contrary to DeRaffele's suggestion, the fact that he filed an appeal to the Commonwealth Court does not save this claim from being barred by *Heck*. *See Murphy v. Bloom*, No. 1:10-CV-1757, 2011 WL 2115826, at *5 (M.D. Pa. May 27, 2011) ("In short, where Murphy's direct appeal from his judgment of sentence remains pending, he cannot make the necessary showing to proceed with this civil rights action that his conviction has been reversed, invalidated, or called into question by the issuance of a federal writ of habeas corpus."), *aff'd*, 443 F. App'x 668, 668 (3d Cir. 2011).

amend XIV, §1.  A due process claim requires a two-part analysis.  First, the court must determine whether the interest asserted by the plaintiff is within the scope of protection of life, liberty, or property found in the Due Process Clause. *Shoats v. Horn*, 213 F.3d 140, 143 (3d Cir. 2000).  Second, if the interest is one that is protected by the Due Process Clause, "the question then becomes what process is due to protect it." *Id.*

The defendants do not dispute that DeRaffele has a property interest protected by due process in 814 Hepburn Street.  Thus, the question is whether DeRaffele was provided with the process he was due.  "To determine what process is due in a particular situation, courts consider three factors: first, the private interest at stake; second, the risk of erroneous deprivation of that interest through the procedures used and the probable value of different procedures; and third, the government's interest." *Mulholland v. Gov't County of Berks,* 706 F.3d 227, 238 (3d Cir. 2013).  "The core of due process is the right to notice and a meaningful opportunity to be heard." *LaChance v. Erickson,* 522 U.S. 262, 266 (1998).  "That opportunity 'must be granted at a meaningful time and in a meaningful manner.'" *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412, 417 (3d Cir. 2008) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Due process usually requires some type of pre-deprivation hearing.  "As a default matter, '[i]n situations where the State feasibly can provide a

predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.'" *Montanez v. Sec'y Pennsylvania Dep't of Corr.*, 773 F.3d 472, 483 (3d Cir. 2014) (quoting *Zinermon v. Burch,* 494 U.S. 113, 132 (1990)).  "Thus, where the pre-deprivation safeguards 'would be of use in preventing the kind of deprivation alleged,' the state must provide such a hearing." *Id.* (quoting *Zinermon,* 494 U.S. at 139).  In limited circumstances, however, a post-deprivation hearing may satisfy due process such as where there is an emergency that requires '"quick action by the State,' or where 'providing any meaningful predeprivation process' would be impractical." *Elsmere Park Club*, 542 F.3d at 417 (quoting *Parratt v. Taylor*, 451 U.S. 527, 539 (1981)).  In determining whether an emergency exists requiring quick action such that a predeprivation hearing is unnecessary, we ask whether "there is competent evidence allowing the official to reasonably believe that an emergency does in fact exist . . . [and] the discretionary invocation of an emergency procedure results in a constitutional violation only where such invocation is arbitrary or amounts to an abuse of discretion." *Id.* at 418 (footnote omitted) (quoting *Catanzaro v. Weiden*, 188 F.3d 56, 63 (2d Cir. 1999)).  But "[u]nless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before

17

seizing real property . . . ." *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 62 (1993).

Here, DeRaffele alleges that 814 Hepburn Street was condemned without notice or a hearing prior to the closure.  The defendants contend that because the property lacked electricity there was an emergency situation and, thus, no pre-deprivation process was required.  In that regard, the defendants assert that the Code requires all residential units to maintain electrical service.   They point to Section 604.2 of the IPMC of 2015,[11] which provides:  "The size and usage of

---

[11]  Although DeRaffele contends that Williamsport had not adopted the 2015 version of the IPMC, we reject that argument for the same reason as Judge Lovecchio did when DeRaffele raised it in his state appeal of Magisterial District Judge Page's decision.  Judge Lovecchio noted the DeRaffele was charged with violating Williamsport City Ordinance 1741.01 and more specifically § 108.5 of the IPMC of 2015 as adopted by the City Ordinance 1741.01. *Doc. 22-1* at 1.  Rejecting DeRaffele's argument that the City cannot enforce the IPMC of 2015, Judge Lovecchio reasoned:

> [DeRaffele] claims that Ordinance 1741.01 only adopted the 2003 version of the code and not the 2015 version.  [DeRaffele] argues that because it was not adopted, approved or published by the city it "cannot be enforced."
>
> The 2015 IPMC, admitted as an exhibit during the trial in this matter prohibits an owner of a property that has been condemned and placarded by a code official to permit an occupancy of those premises.  Article 1741.01 of the Williamsport City Code, also admitted as an exhibit during trial, specifically adopts the IPMC of 2003.
>
> Clearly the language of Article 1741.01 does not specifically adopt the 2015 IPMC.  The City argues, however, that the 2015 version is enforceable.
>
> First, the City argues that it was authorized to adopt the IPMC under the Pennsylvania Third Class City Code and did

appliances and equipment shall serve as a basis for determining the need for

additional facilities in accordance with NFPA 70. *Dwelling units* shall be served

by a three-wire, 120/240 volt, single-phase electrical service having a minimum

rating of 60 amperes." *Doc. 10-4* at 4 (italics in original).  Although this section

appears to deal with the technical requirements for electrical systems in dwelling

units, it presupposes that a dwelling unit will have electricity.  Section 108.1 of the

Code provides that "when a structure or equipment is found by the *code official* to

be unsafe, or when a structure is found unfit for human *occupancy*, or is found

unlawful, such structure shall be *condemned* pursuant to the provisions of his

code." *Id*. at 2.   Further, Section 108.1.3 provides that "[a] structure is unfit for

human *occupancy* whenever the *code official* finds that such structure is unsafe,

unlawful or, because . . . the structure lacks . . . illumination." *Id*. at 2.  Given the

lack of electricity, it was reasonable for the defendants to believe that the property

not need to pass an ordinance specifically adopting each
revision of the IPMC. 53 P.S. §36018.4 and 53 P.S. §39104.A.
[T]he City's position is correct.  These code provisions
permitted the city to incorporate a standard or nationally
recognized property maintenance code or a variation or change
by reference without setting forth the text of the code in the
ordinance.

  The ordinance upon which the City relies was approved
on April 29, 2004.  City ordinance § 1741.01 specifically
adopts the IPMC of 2003 as published by the International
Code Council, Inc.  The Third Class City code specifically
authorized the adoption and enforcement of any variations of
the IPMC of 2003.

*Id*. at 2.

violated the code and was not fit for human occupancy, and DeRaffele has not

pleaded facts from which it could reasonably be inferred that the defendants

actions were arbitrary or an abuse of discretion.  Accordingly, based on the

allegations in the amended complaint, there was an emergency situation, and, as

such, no pre-deprivation process was due to DeRaffele.

Given that no pre-deprivation process was due, the issue then becomes

whether there was an adequate post-deprivation process available to DeRaffele to

challenge the condemnation. *Elsmere Park Club*, 542 F.3d at 420 ("Having

concluded that a predeprivation hearing was not required, we must nevertheless

determine whether the postdeprivation remedy the Town offered was adequate.").

Although DeRaffele alleges in this amended complaint that there was no adequate

post-deprivation remedy available, he has not alleged any facts to support that

assertion.[12]  Accordingly, the amended complaint fails to state a due process claim

upon which relief can be granted.

We note that in his brief in opposition the motion to dismiss, DeRaffele

asserts facts that he did not plead in his amended complaint.  He asserts that the

electricity was off for only "a short period of time while the tenant was waiting for

---

[12]  In his brief, DeRaffele asserts that since the tenant cured the violation by having
the electric turned on, there was no need for a post-deprivation hearing. *Doc. 16* at
9-10.  That the tenant had the electric turned back on soon after the condemnation
notice was posted does not bear on whether there was an adequate post-deprivation
remedy available to DeRaffele.

her paycheck," and the "tenant had made arrangements for temporary battery-operated lights as were needed for the few days the electricity was out." *Doc. 15* at 6.[13]  DeRaffele also asserts that "in the last several years there have been numerous storms and people have been without electric; yet Codes did not go out and condemn these properties." *Doc. 16* at 10.  Further, he asserts that on the day of the condemnation, UGI had closed off Hepburn Street and "every house on the block was without gas, and could not provide gas/hot water or gas cooking," but "none of those houses were condemned." *Doc. 15* at 6 and *Doc. 16* at 9.  Further, DeRaffele asserts that the defendants condemned his property as revenge for his previous lawsuits, which sought to overturn Williamsport's Rental Ordinance and which named them, that Evansky and Girardi are angry with him, and that Evansky was targeting him. *See Doc. 16* at 4, 9-11.  As there are no such allegations in the amended complaint and the court "is not compelled to accept assertions in a brief without support in the pleadings," *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015) (quoting  *Morrow v. Balaski,* 719 F.3d 160, 165 (3d Cir. 2013), we do not consider those factual assertions.  Nor do we construe the amended complaint as raising a retaliation claim.

---

[13] DeRaffele also points out that since it was July, it did not get dark until late. *Doc. 16* at 6 ("The tenant had battery-operated lanterns that she used until the PP&L electric bill was paid, and they were used for a few hours each day since in July it does not get dark until approximately 8:30 pm or 9:00 pm.").

### C.  Fourth Amendment.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV.  The Fourth Amendment applies to the seizure of real property. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 52 (1993) ("Though the Fourth Amendment places limits on the Government's power to seize property for purposes of forfeiture, it does not provide the sole measure of constitutional protection that must be afforded property owners in forfeiture proceedings.").  "A 'seizure' of property . . . occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" *Soldal v. Cook Cnty.*, 506 U.S. 56, 61 (1992) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)).

"A reasonableness standard governs whether a municipality's seizure of a building violates the Fourth Amendment." *Thompson v. Armbruster*, No. 1:13-CV-2885, 2015 WL 853769, at *5 (M.D. Pa. Feb. 26, 2015).  "Where a building is seized because of the danger it poses and adequate recourse is provided to challenge any action taken by the local government, the seizure does not violate the Fourth Amendment." *Gardner v. McGroarty*, 68 F. App'x 307, 312 (3d Cir. 2003) (concluding that because the posting of the building as unfit for human habitation because of lack of heat was consistent with the Wilkes–Barre Housing

22

Code, "an 'emergency' existed as a matter of law, and the emergency justified the seizure of Gardner's apartment building"); see also *Thompson,* 2015 WL 853769, at *5 (granting summary judgment on Fourth Amendment claim where the seizure of the property was made because of municipal code violations and the plaintiff did not present evidence that the seizure was arbitrary or inconsistent with applicable regulations and ordinances); *Para v. City of Scranton*, No. CIV.A. 3:CV-06-2432, 2008 WL 2705538, at *16 (M.D. Pa. July 10, 2008) ("[I]f the action taken by the Defendants was taken in an emergency situation or their actions adhered to their own ordinances or procedures, their actions would not violate the Fourth Amendment."). Thus, generally where a seizure complies with due process is it also reasonable under the Fourth Amendment. *See RBIII, L.P. v. City of San Antonio*, 713 F.3d 840, 846 (5th Cir. 2013) ("Because the Fourth Amendment generally requires no more than due process of law in summary abatement cases, the outcome of a Fourth Amendment claim depends on whether the seizure complied with due process.").

Here, as discussed above, the property was closed because it lacked electricity, which was a violation of the Code, and DeRaffele has not alleged facts from which it can reasonably be inferred that he did not have adequate recourse to challenge that action. Thus, the closure was reasonable. Accordingly, based on

the allegations in the amended complaint, DeRaffele has failed to plead a Fourth

Amendment claim upon which relief can be granted.[14]

### D.  Municipal Liability.

In addition to claiming that defendants Girardi and Evansky violated his

rights, DeRaffele brings claims against the City of Williamsport.   Under 42 U.S.C.

§ 1983, a municipality, such as the City of Williamsport, cannot be held liable for

the unconstitutional acts of its employees on a theory of *respondeat superior*,

*Monell v. Department of Social Servs.,* 436 U.S. 658, 691 (1978), but a

municipality may be liable under 42 U.S.C. § 1983 for its own illegal acts. *Connick*

*v. Thompson,* 131 S.Ct. 1350, 1359 (2011).  To state a claim against a

municipality, the plaintiff must allege that the violation of his rights was caused by

a policy of the municipality. *Id.*  Municipal policies include the decisions of a

government's lawmakers and the acts of its policymaking officials as well as

municipal customs, which are acts or practices that, even though not formally

approved by an appropriate decisionmaker, are so persistent and widespread as to

have the force of law. *Id.*; *Natale v. Camden County Correctional Facility*, 318

F.3d 575, 583 (3d Cir. 2003).  In other words, a municipality "'can be held

---

[14]  Defendants Girardi and Evansky contend that they are entitled to qualified
immunity.  Because we conclude that the amended complaint fails to state a claim
against them upon which relief can be granted, there is no need to separately
address whether they are entitled to qualified immunity.

responsible as an entity when the injury inflicted is permitted under its adopted policy or custom.'" *Mulholland v Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996)). But "[i]t is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Id.*at 238 n.15.

We have already determined that the complaint fails to state a claim upon which relief can be granted against Girardi and Evansky, the very officials who took that action at issue in this case.  Thus, as the amended complaint fails to state a claim upon which relief can be granted against Girardi and Evansky, it follows that it fails to state a claim upon which relief can be granted against the City of Williamsport.

### E.  Leave to Amend.

"[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. County of Allegheny,* 515 F.3d 224, 245 (3d Cir. 2008).  The court "must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." *Id.*  We cannot say that amendment would be inequitable or

futile in this case. Thus, we will recommend that DeRaffele be granted leave to file a second amended complaint.[15]

## VI. Recommendations.

Based on the foregoing, it is recommended that the defendants' motion (doc. 10) to dismiss the amended complaint be granted. It is also recommended that DeRaffele be granted leave to file a second amended complaint.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive

---

[15] Any second amended complaint shall be complete in all respects. It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaints already filed. It shall not incorporate by reference any of the previous complaints. Any second amended complaint shall be titled as a second amended complaint and shall contain the docket number of this case.

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 3rd day of October, 2016.


**_S/Susan E. Schwab_**
Susan E. Schwab
United States Magistrate Judge